O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DAVID SHEPHERD and BRUCE          §
GOLDFARB, Individually and On     §
Behalf of a Class of Similarly    §
Situated Individuals,             §
                                  §
            Plaintiffs,           §
                                  §
v.                                §       CIVIL ACTION NO. H-03-5292
                                  §
WORLDCOM INC., MCI WORLDCOM       §
MANAGEMENT COMPANY, INC.,         §
MCI WORLDCOM COMMUNICATIONS,      §
INC., MCI WORLDCOM NETWORK        §
SERVICES, INC., and               §
THE WORLDCOM HEALTH AND           §
WELFARE BENEFITS PLAN,            §
                                  §
            Defendants.           §

MEMORANDUM AND ORDER

Pending are Defendant The WorldCom Health and Welfare Benefits

Plan's Motion for Summary Judgment (Document No. 41) and Plaintiffs

David Shepherd's and Bruce Goldfarb's Supplemental Motion for Class

Certification (Document No. 44), Motion for Continuance of the

Court's Consideration of Defendant's Motion for Summary Judgment

Pending Deposition of Ms. Susan Tavel ("Tavel") (Document No. 47),

and Motion to Strike Summary Judgment Evidence (Document No. 62).[1]

---

[1] Plaintiffs have now taken Tavel's deposition, and the motion
for continuance (Document No. 47) is therefore DENIED.  In the
motion to strike, Plaintiffs argue that Tavel's deposition

After having carefully reviewed the motions, responses, replies, and applicable law, the Court concludes as follows:

## I.   Background

This case arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.  Plaintiffs David Shepherd ("Shepherd") and Bruce Goldfarb ("Goldfarb") (collectively, "Plaintiffs") are former employees of WorldCom, Inc. ("WorldCom") and former participants in The WorldCom Health and Welfare Benefits Plan ("Defendant" or "the Plan").  When Shepherd and Goldfarb became disabled from performing their job duties in 1989 and 1990 respectively, both applied for and began receiving long term disability benefits.  While out on long term disability, Shepherd and Goldfarb remained employed by WorldCom and continued to participate in the Plan.

In June 2001, WorldCom adopted a "Leave of Absence" policy (the "Policy") that limited available leave, for whatever reason, to 18 cumulative weeks and mandated the termination of all employees who remained off work for more than that period.  *See*

---

testimony renders ¶¶ 15 and 16 of her prior affidavit inaccurate in material respects, and therefore her entire affidavit should be stricken.  The motion to strike the entire affidavit is without merit, and because the Court has not relied on the disputed portions of the affidavit in deciding the summary judgment motion, the motion to strike (Document No. 62) is DENIED.

Document No. 43 exs. F ¶ 4; F-1.  On July 10, 2001, WorldCom notified Plaintiffs that they had exhausted their available leave under the new Policy and as a result, their employment would be terminated if they did not return to work.  Id. exs. F-2; F-3. Neither Shepherd nor Goldfarb returned, and in accordance with the Policy, Worldcom terminated Goldfarb's employment on July 23, 2001, and Shepherd's employment on December 5, 2001.  Id. exs. F ¶¶ 8-9; C-36; F-6.  Although Plaintiffs continued to receive long term disability benefits, Plaintiffs' medical, dental, vision, prescription drug, and life insurance benefits under the Plan were discontinued as of the dates of their terminations.  Id. exs. C-36; F-6.

Thereafter, Shepherd and Goldfarb--individually and on behalf of a putative class of former employees who were terminated from their employment while on long term disability--brought this suit against Worldcom and several WorldCom subsidiaries (collectively, the "WorldCom Defendants"), and the Plan, asserting: (1) a claim of wrongful termination of employment under ERISA § 510, 29 U.S.C. § 1140; (2) a claim for benefits under ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1); (3) a claim of breach of fiduciary duty under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2); and a claim for injunctive and declaratory relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). See Document No. 15 ¶¶ 26-44.  After the WorldCom Defendants filed for bankruptcy protection in July 2002, Plaintiffs' claims against

them were stayed and severed, but Plaintiffs' suit against the Plan was permitted to proceed. *See* Document No. 25.[2]   The Plan now moves for summary judgment on each of Plaintiffs' ERISA claims.[3]

## II.   Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).   The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *See* id. at 2553-54.   A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and

---

[2] The Plan explains that "Plaintiffs' claims against the WorldCom [D]efendants have been discharged in bankruptcy, and Plaintiffs have filed Proofs of Claims asserting their claims against WorldCom in the Bankruptcy Court." Document Nos. 42 at 1; 50 ex. G.

[3] Because the issue of class certification need not be reached if there are no material fact issues in support of Plaintiffs' claims, the Court considers first the Plan's summary judgment motion. *See* Floyd v. Bowen, 833 F.2d 529, 534-35 (5th Cir. 1987).

unsubstantiated assertions that a fact issue exists will not suffice. *See* Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2514-15 (1986)). "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. *See* Anderson, 106 S. Ct. at 2513-14. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. (citing Anderson, 106 S. Ct. at 2511). Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

III.  Discussion

A.   ERISA § 510 Claim

In their First Amended Complaint, Plaintiffs allege that "WorldCom terminated Plaintiffs and each and every member of the class for the purpose of and with the intention of with [sic] interfering with their and their beneficiaries' continued participation in the Plan and/or the attainment of certain rights and vested benefits under the Plan." *See* Document No. 15 ¶ 26. Plaintiffs therefore "seek all available remedies under [§ 510 of ERISA, 29 U.S.C. § 1140] for this illegal discriminatory course of action by WorldCom as the employer and administrator of the Plan." *See* id. ¶ 27. The Plan moves for summary judgment on this claim, arguing that the Plan is not the proper defendant to Plaintiffs' § 510 claim, and even if it were, there is no evidence that the Plan violated § 510. In fact, Plaintiffs' First Amended Complaint contains no allegation that *the Plan* somehow violated § 510 of ERISA when WorldCom terminated Plaintiffs' employment. *See* id. ¶¶ 26-27. Nonetheless, assuming arguendo that Plaintiffs have asserted a § 510 claim against the Plan, the claim fails as a matter of law because the Plan is not the proper defendant to Plaintiffs' § 510 claim.

6

Section 510 of ERISA makes it unlawful for "any person" to discharge, fine, suspend, expel, discipline, or discriminate against an ERISA plan participant or beneficiary for the purpose of interfering with the attainment of any right to which the participant may become entitled under the plan. *See* 29 U.S.C. § 1140. ERISA expressly defines the term "person" as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9). Importantly, the term "person" does not include a "plan," and those courts that have considered the issue agree that a plan is not a proper defendant to a claim under § 510. *See*, *e.g.*, Swanson v. U.A. Local 13 Pension Plan, 779 F. Supp. 690, 702 (W.D.N.Y. 1991) ("The court cannot ignore the statutory definition of 'person,' and Swanson's § 1140 claim against the Plan itself must therefore be dismissed as a matter of law."); Adams v. Koppers Co., Inc., 684 F. Supp. 399, 401 (W.D. Pa. 1988) ("After reviewing the statutory text, the legislative history, and the case law, we conclude that a plan is not a proper defendant under 29 U.S.C. § 1140."); Borntrager v. Cent. States, Se. & Sw. Areas Pension Fund, No. C02-0139, 2003 WL 22251407, at *6 (N.D. Iowa July 2, 2003) (same); Young v. AT&T Transition Prot. Payment Plan, Civ. No. 87-5100, 1989 WL 675, at *2 (D.N.J. Jan. 6, 1989) (same); *see also* DeGrave v.

7

<u>Nat'l Automatic Merch. Ass'n Pension Plan</u>, No. 04 C 8147, 2005 WL 1204605, at *2-3 (N.D. Ill. May 18 2005) ("[A] pension plan not involved in the changed employer-employee relationship is not a proper defendant under Section 510.").

These authorities are persuasive that an employee benefit plan is not the proper defendant in an ERISA action brought under § 510 alleging improper interference with the attainment of benefits through the termination of employment, and Plaintiff's § 510 claim against the Plan fails as a matter of law.[4]

B.   <u>Section 502 Claims</u>

1.   <u>Section 502(a)(1)</u>

Section 502(a)(1)(B) authorizes a participant to bring an action for recovery of benefits to which the participant is

---

[4]   Plaintiffs argue that Tavel's deposition testimony establishes that Tavel, in her capacity as WorldCom's Plan Administrator, was involved in WorldCom's decision to terminate Plaintiffs' employment, and therefore the Plan is subject to liability under § 510. *See* Document No. 61. Plaintiffs' argument fails to recognize, however, that the Plan and the Plan Administrator are distinct legal entities under ERISA, and while a Plan Administrator may qualify as a "person" for purposes of § 510--an issue the Court need not decide here--a "plan" cannot. *See* 29 U.S.C. § 1002(9). Thus, that the Plan Administrator may have been involved in the decision to terminate Plaintiffs' employment does not subject the Plan itself--as opposed to the Plan Administrator--to liability under § 510 for Plaintiffs' terminations.

entitled under the terms of a plan, to enforce rights under a plan, or to clarify rights to future benefits under a plan.  29 U.S.C. § 1132(a)(1)(B).  Plaintiffs contend that under the terms of the Plan, persons out on long term disability are entitled to continue participating in the Plan even after their employment is terminated, and therefore Plaintiffs are entitled to relief under § 502(a)(1)(B).  The Plan argues that Plaintiffs' § 502(a)(1)(B) claim is barred for failure to exhaust administrative remedies; specifically, for Plaintiffs' failure to invoke the Plan's claims procedure and appeals process.  *See* Document No. 42 at 13-16.

WorldCom's Summary Plan Description ("SPD") specifies that all claims for benefits must be filed with the appropriate Claims Administrator for the type of benefit claimed within 60 days of the event in question.  *See* Document No. 43 ex. C-13 at 259.  All other claims related to Plan administration must be filed with the Subcommittee.  Id.  If a claim is denied, or if no reply to the claim is received within 90 days, the SPD provides that a participant has 60 days in which to make an "appeal by submitting in writing a letter requesting an appeal and stating [the participant's] concerns and any related facts to the Committee." Id. at 260.  The SPD states that "[t]he appeal decision is the final, conclusive, and binding administrative remedy under the Plan," but informs participants that they "may have further rights

9

under ERISA after [they] have exhausted [the] claims and appeal process under the Plan." Id.

According to Plaintiffs, after receiving notice that WorldCom was terminating his employment, Shepherd contacted WorldCom to contest his discharge. *See* Document No. 48 ex. B.[5] Shepherd spoke with Tavel, to whom Shepherd expressed "unhapp[iness] about being terminated" and "concern[] about the loss of his benefits." *See* Document No. 61 ex. A at 153-56.[6] According to Tavel, Shepherd did not discuss making a benefits claim or ask whether he could appeal his loss of benefits, and therefore Tavel--understanding the primary purpose of Shepherd's phone call was to contest his termination--instructed Shepherd to direct his complaint to WorldCom's legal department. *See* Document No. 61 ex. A at 153-56; *see also* Document No. 48 ex. B.

Thereafter, Shepherd's attorney Nathan Wesely ("Wesely") wrote a letter to WorldCom's legal department, in which Wesely alleged that Shepherd's termination violated ERISA § 510 and communicated

---

[5] There is no evidence that Goldfarb or any of the other former WorldCom employees on behalf of whom Plaintiffs purport to bring this suit ever contacted WorldCom to contest either their terminations or the resulting loss of their eligibility for benefits under the Plan. *See* Document No. 43 ex. B at 110-11.

[6] In his Declaration, Shepherd states: "I contested my discharge, but received a letter in December, 2001, confirming the termination of my employment." Document No. 48 ex. B. Shepherd does not state that he contested the termination of his eligibility for benefits. *See* id.

10

Shepherd's willingness to take legal action to enforce his alleged right to continue receiving benefits under the Plan. *See* Document No. 43 ex. C-34. Wesely did not, however, inquire about the Plan's administrative procedures for making a benefits claim under the Plan. Id. WorldCom's legal department responded by letter, explaining that "[h]aving researched carefully the merits of Mr. Shepherd's claims, we have concluded that the proposed termination of Mr. Shepherd's employment does not violate either the terms of [the Plan] or Section 510 of ERISA." Id. ex. C-35. The legal department also replied to Wesely's threat of a lawsuit by stating that "WorldCom will vigorously defend any claims you may file on behalf of Mr. Shepherd." Id. Shepherd and Goldfarb then filed this lawsuit.

The Fifth Circuit requires that "claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." Coop. Benefit Adm'rs, Inc. v. Ogden, 367 F.3d 323, 336 (5th Cir. 2004) (quoting Bourgeois Pension Plan for the Employees of Sante Fe Int'l Corps., 215 F.3d 475, 479 (5th Cir. 2000)). "The policies behind the exhaustion requirement include upholding Congress's desire that ERISA trustees and not the federal courts be responsible for the actions of plan administrators, providing a clear record of administrative action if litigation ensues, and

allowing judicial review of fiduciary action or inaction under the abuse of discretion standard, where applicable, rather than *de novo*." Bourgeois, 215 F.3d at 479 n.4.

Plaintiffs admit that they did not avail themselves of the administrative procedures set forth in the Plan to contest their loss of eligibility for benefits but advance the following theories as to why they should be excused from the exhaustion requirement: (1) administrative exhaustion should be deemed under ERISA regulation 29 C.F.R. § 2560.503-1(l); (2) WorldCom waived the requirement for exhaustion of administrative remedies by Tavel's instruction to Shepherd to direct his complaint to WorldCom's legal department; (3) to have filed a complaint and appeal in accordance with the Plan's administrative procedures would have been futile; (4) Plaintiffs satisfied the exhaustion requirement through Shepherd's informal efforts; and (5) the Plan is estopped from raising the defense of failure to exhaust administrative remedies because Tavel directed Shepherd to contact WorldCom's legal department but did not mention the Plan's claims procedure.  Each of these contentions fails for the reasons set forth below.

First, Plaintiffs argue that "no administrative decision was made regarding Plaintiffs' eligibility nor were any claims processes followed and thus administrative exhaustion may be deemed per ERISA regulations."  *See* Document No. 61 at 16.  In support of

12

this argument, Plaintiffs cite regulations requiring the plan administrator to provide written notice of an adverse benefit determination, along with the reasons for the denial and a reference to the relevant language in the plan. 29 C.F.R. § 2560.503-1(g). Importantly, however, this notification obligation is not triggered until the employee files a claim in accordance with the plan's claims procedure. *See* id. § 2560.503-1(e) ("[A] claim for benefits is a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims."); § 2560.503-1(f) ("[I]f a claim is wholly or partially denied, the plan administrator shall notify the claimant, in accordance with paragraph (g) of this section, of the plan's adverse benefit determination within a reasonable period of time, but not later than 90 days after receipt of the claim by the plan"). Because Plaintiffs never filed a claim with the Subcommittee in accordance with the Plan's claims procedure, the deemed exhaustion provision set forth in 29 C.F.R. § 2560.503-1(l) does not apply.

Second, Plaintiffs argue that "Tavel's comments [referring Shepherd to Worldcom's legal department] amounted to a waiver of the Plan's appeals process in favor of an appeal to WorldCom's legal department." Document No. 48 ¶ 14. Plaintiffs cite no authority recognizing waiver as an exception to the exhaustion

13

requirement, but even assuming such an exception exists, Plaintiffs have failed to raise a genuine issue of material fact that WorldCom voluntarily and intentionally relinquished or abandoned its right to insist on compliance with the Plan's administrative procedures for claims related to administration of the Plan. *See*, *e.g.*, BLACK'S LAW DICTIONARY 1611 (8th ed. 2004) (defining "waiver" to mean "[t]he voluntary relinquishment or abandonment—express or implied—of a legal right or advantage. The party alleged to have waived a right must have had both knowledge of the existing right and the intention of foregoing it."). There is no summary judgment evidence that Shepherd discussed the Plan's administrative procedures with Tavel or, more importantly, that Tavel told Shepherd he did not need to follow those administrative procedures to contest the termination of his eligibility for benefits under the Plan (as opposed to the termination of his employment). Moreover, there is no summary judgment evidence that Tavel refused a request for Plan documents outlining the Plan's administrative procedures, denied Shepherd meaningful access to those procedures, deliberately misled Shepherd, or otherwise substantially harmed or prejudiced Shepherd in his efforts to obtain benefits.[7]

---

[7] In fact, Shepherd testified that after he was terminated, he requested a full copy of the Plan documents, which Tavel provided. *See* Document No. 43 ex. A at 68, 111.

Accordingly, Plaintiffs' waiver argument does not excuse them from the exhaustion requirement.

Third, Plaintiffs argue that any attempt to exhaust their administrative remedies would have been futile.  Although the Fifth Circuit "has recognized an exception to the affirmative defense of failure to exhaust administrative remedies when such attempts would be futile," Bourgeois, 215 F.3d at 479, "[a] failure to show hostility or bias on the part of the administrative review committee is fatal to a claim of futility," McGowin v. ManPower Int'l, Inc., 363 F.3d 556, 559 (5th Cir. 2004).  Plaintiffs make no such showing here.  Plaintiffs first argue that the WorldCom legal department's response to Wesely's letter "made it clear that further attempts at appeals were patently futile."  Document No. 48 ¶ 14.  Although WorldCom's legal department may have concluded that Shepherd's termination did not violate ERISA or the Plan, there is no evidence that the administrative review subcommittee harbored any hostility toward or bias against Plaintiffs such as to have made it futile for Plaintiffs to present claims setting forth their interpretation of the Plan to the Plan's Subcommittee for consideration.  In other words, the legal department's letter constitutes no evidence that the Plan's Subcommittee was biased against or hostile toward Plaintiffs or that it would not have considered a claim regarding the proper construction of the Plan.

*See* <u>McGowin</u>, 363 F.3d at 559-60 (holding that statements by those not responsible for adjudicating benefits claims did not show that it would have been futile for plaintiff properly to present her claim for administrative review); <u>Bourgeois</u>, 215 F.3d at 479-80 (holding that statements made by the chairman of the board of employer's parent corporation did not establish that the plan's administrative committee would have rejected plaintiff's claim).

Plaintiffs also cite portions of Tavel's deposition testimony, arguing that her referral of Shepherd to the legal department rather than to the Subcommittee evidences her hostility and bias against Shepherd. *See* Document No. 61 at 19-20. During her deposition, Tavel expressed her belief that an employee's eligibility for benefits under the Plan terminates automatically upon the termination of employment and her opinion that because WorldCom had terminated Shepherd's employment, any claim or appeal Shepherd might have filed in accordance with the Plan's administrative procedures "probably" would have been denied. *See* Document No. 61 ex. A at 155-56, 158, 161, 189-90, 200-01, 203-04. Tavel also testified, however, that Plaintiffs "could have filed an appeal" challenging the end of their coverage under the Plan and that the Subcommittee "would have heard the appeal." <u>Id.</u> at 201.[8]

---

[8] Although Plaintiffs cite two deposition excepts for the proposition that Tavel "testified under oath that administrative

Viewing Tavel's testimony in the light most favorable to Plaintiffs, it does not reveal any bias or hostility on the part of Tavel.

Moreover, Tavel is only one member of the Subcommittee. Id. at 21. Absent evidence that other members of the Subcommittee exhibited some personal bias or harbored some bitterness or ill will for Plaintiffs, any representations Tavel may have made or beliefs she may have held regarding the viability of Plaintiffs' contentions do not relieve Plaintiffs from following the Plan's prescribed administrative procedures. See, e.g., Shamoun v. Bd. of Trs., 357 F. Supp. 2d 598, 605 (E.D.N.Y. 2005) ("Courts hold that representations by one member of a benefits committee that plaintiff's claim is meritless do not relieve a claimant from following the prescribed administrative procedure of the benefit plan."); see also Denton v. First Nat'l Bank of Waco, Tex., 765

---

appeals would have been futile," see Document No. 61 at 18-20, the questions of Plaintiffs' counsel--and Tavel's responses thereto--are ambiguous. It is not clear whether Plaintiffs' counsel was referring to Worldcom's decision to terminate Plaintiffs' employment, which Tavel apparently understood to be appealable to WorldCom's legal department; or whether Plaintiffs' counsel was referring to the end of Plaintiffs' eligibility to participate in the Plan, which Tavel's deposition testimony indicates Plaintiffs could have challenged under the Plan's administrative procedures. See, e.g., Document No. 61 ex. A at 151-58, 160-62, 200-05. The deposition excerpts are not evidence that the administrative review committee was biased against or hostile toward Plaintiffs. See McGowin, 363 F.3d at 559.

F.2d 1295, 1300-02 (5th Cir. 1985) (rejecting plaintiff's contention that it would have been futile for him to appeal to the benefits review committee--which was the same committee that initially denied his claim--where there was no evidence that a majority of the committee members were hostile or bitter toward plaintiff). In sum, nothing in Tavel's deposition testimony--including her personal interpretation of the Plan's eligibility requirements--raises a genuine issue of material fact that she or any other member of the Plan's Subcommittee was hostile toward or biased against Plaintiffs. *See* Commc'ns Workers of Am. v. AT&T, 40 F.3d 426, 433 (D.C. Cir. 1994) (rejecting futility argument even though benefits committee consisted of company officials who had already interpreted the plan in such a way as to preclude plaintiff's claim because it was not certain that committee would have denied the claim in a final determination). Therefore, the futility exception does not apply to Plaintiffs' claim.

Fourth, Plaintiffs contend that they met the exhaustion requirement because "Shepherd informally requested an appeal of the Plan's decision." *See* Document No. 61 at 20-22. The Fifth Circuit has explained, however, that "allowing informal attempts to substitute for the formal claims procedure would frustrate the primary purposes of the exhaustion requirement." *See* Bourgeois, 215 F.3d at 480 n.14. Thus, neither Shepherd's phone call to Tavel

nor Wesely's letter to the WorldCom legal department satisfies Plaintiffs' obligation to comply with the Plan's formal administrative procedures.

Finally, Plaintiffs cite <u>Bourgeois</u> for the proposition that because Tavel directed Shepherd to contact WorldCom's legal department "but mentioned no other method of appealing the Plan's denial of eligibility," the Plan should be estopped from raising the defense of failure to exhaust administrative remedies in this case.  *See* Document No. 61 at 22-23.[9]  In <u>Bourgeois</u>, the plaintiff sued his former employer's parent company and two of its benefits plans under ERISA, seeking enhanced pension benefits.  <u>Bourgeois</u>, 215 F.3d at 477-78.  Although Bourgeois spent more than a year engaged in "a series of conversations and correspondences" with various and high ranking company officials, including the senior human resources official and both the chairman of the board of his employer company and the chairman of the board of its parent company, he never submitted a written claim to the plans' benefits committee in accordance with the plans' claims procedures before

---

[9] As an initial matter, there is no evidence that Goldfarb contacted Tavel or any other WorldCom employee to contest either his discharge or the termination of his eligibility to participate in the Plan.  Thus, there is no summary judgment evidence even to support an estoppel argument with respect to Goldfarb, and the Plan for that reason alone is not estopped from maintaining its exhaustion defense against him.

filing a lawsuit under ERISA.  Id.  Accordingly, the district court granted summary judgment in favor of defendants on their affirmative defense of failure to exhaust administrative remedies. Id. at 479.

On appeal, the Fifth Circuit rejected Bourgeois's arguments that he should be excused from the exhaustion requirement because resort to the administrative remedies outlined in the plans would have been futile and/or because the administrator's failure to provide him with complete plan information "forced him to waste years of time trying to resolve his claim" and left him without adequate information to pursue those administrative remedies.  Id. at 479-81.  The Court agreed, however, that "the lack of information and behavior of various officials of the company led Bourgeois on a wild goose chase, effectively extinguishing his time to apply for benefits," and the Court was therefore "inclined to estop the defendants from asserting certain defenses."  Id. at 481-82.  Because allowing "estoppel to prevent the defendants from asserting their failure to exhaust defense" would result in the case being remanded to the district court for a benefits determination--a disfavored result--the Court concluded that "the better course would be to refer the claim to the benefits committee for an initial benefits determination."  Id. at 482.  Thus, "while not ruling out the possibility that estoppel might allow a claimant

20

to overcome a defense based on a failure to exhaust," the Fifth Circuit "instead merely estop[ped] the defendants from arguing that Bourgeois's claim [was] time-barred before the [benefits] Committee." Id.

Although Shepherd's facts fall far short of those of the claimant in Bourgeois, Shepherd relies on Bourgeois to argue that the Plan should be estopped from asserting an exhaustion defense against him. Unlike Bourgeois, Shepherd *did* receive from WorldCom a copy of the relevant Plan documents, which fully set forth the Plan's administrative procedures and requirements for Shepherd to file a benefits claim. Unlike Bourgeois, Shepherd not only had the Plan documents containing all of the information needed to file a claim in accordance with the Plan's claims procedure but he also was represented by his own legal counsel from the date that his eligibility to participate in the Plan was discontinued on December 5, 2001 (the date of his discharge). Unlike Bourgeois, whose case was decided in 2000, Shepherd by December, 2001, had the added advantage of reading the holdings of the Fifth Circuit in Bourgeois, namely, that the Fifth Circuit "requires that claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits," id. at 479, and "that allowing informal attempts to substitute for the formal claims procedure would frustrate the

21

primary purposes of the exhaustion requirement." Id. at 480 n. 14.
Unlike Bourgeois's experience with the officials in his company,
there is no evidence that Shepherd was deliberately misled by Tavel
or any other WorldCom official in an effort to string him along
until the time for filing a claim under the Plan expired.  In sum,
the facts that warranted a limited estoppel in Bourgeois--a lack of
complete plan information, a failure to comply with statutory and
regulatory ERISA requirements, a series of conversations and
correspondences with high and the highest officials of the
employer's parent company who engaged the plaintiff in discussions
regarding his pension plan benefits until the parent company
successfully sold off the employer company, and a plaintiff who
"received the runaround"--are not present in this case.
Accordingly, the Plan is not estopped from asserting against
Shepherd an exhaustion defense.[10]

---

[10] The very limited estoppel employed in Bourgeois, as observed
above, was to estop the defendants from asserting that the claim
was barred by limitations when it was remanded to the
administrative committee for a benefits determination.  Shepherd
has never asked that his benefits claim be referred to the
administrative process with employment of the very limited estoppel
ordered in Bourgeois and, indeed, pursuant to the above analysis he
would not be entitled even to that.  Instead, he contends that the
Plan should be estopped from raising the defense of his failure to
exhaust administrative remedies, thereby requiring this Court to
make the initial benefits determination.  This is the very kind of
estoppel that the Fifth Circuit expressly refused to order in
Bourgeois with the observation that "[s]uch court determinations
are disfavored. . . ." Id. at 482.  Moreover, the parties have not

Plaintiffs failed to exhaust their administrative remedies under the Plan, and their § 502(a)(1)(B) claim for benefits must therefore be dismissed.

### 2.   Section 502(a)(2) Claim

Plaintiffs also assert against the Plan a breach of fiduciary duty claim under ERISA § 502(a)(2). ERISA § 502(a)(2) authorizes a participant or beneficiary to bring an action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109, which governs liability for breaches of ERISA's fiduciary provisions. *See* 29 U.S.C. § 1132(a)(2). ERISA § 409 provides that "[a]ny *person* who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed on such fiduciaries by this subchapter shall be personally liable. . . ." 29 U.S.C. § 1109(a) (emphasis added). As observed above at page 7, plans are not included within ERISA's definition of "persons," and they are not properly subject to breach of fiduciary duty claims. Boucher v. Williams, 13 F. Supp. 2d 84, 93 (D. Me. 1998); Teamsters Pension Trust Fund of Phila. & Vicinity v. Littlejohn, No. 95-7556, 1997 WL 11292, at *4 n.10 (E.D. Pa. Jan. 10, 1997); Scott v. Poly-Tech, Inc., No. 1:98CV182-D-D, 1999 WL 33120743, at *4 n.6 (N.D.

cited and the Court has not found any case by any court in the five years since Bourgeois that has employed the "disfavored" estoppel theory argued by Shepherd.

Miss. Dec. 16, 1999); *see also* <u>Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.</u>, 185 F.3d 978, 982 (9th Cir. 1999) ("In providing that 'a person is a fiduciary with respect to a plan,' the statute suggests that the 'person' and the 'plan' must be separate entities."); JAMES F. JORDEN ET AL., HANDBOOK ON ERISA LITIGATION § 3.02[A][3], at 3-10 (2d ed. Supp. 2005) ("A plan itself is not included in the definition of 'person' and thus is not a fiduciary."). Thus, Plaintiffs' § 502(a)(2) claim against the Plan fails as a matter of law.[11]

3.   <u>Section 502(a)(3) Claim</u>

Finally, Plaintiffs assert against the Plan a breach of fiduciary duty claim under ERISA § 502(a)(3) and seek (1) a declaratory judgment that they are entitled to benefits under the Plan and that those benefits are "vested," and (2) an injunction reinstating them to the Plan, enjoining the Plan from discontinuing their Plan benefits, and/or enjoining the Plan from amending the

_____

[11] In addition, relief under ERISA § 409 is limited to relief for a plan and does not encompass relief to individuals. *See* <u>Mass. Mut. Life Ins. Co. v. Russell</u>, 105 S. Ct. 3085, 3089 (1985). Establishing a loss to the plan--as opposed to the individual participants--is therefore required to prevail on a § 502(a)(2) breach of fiduciary duty claim. *See* <u>McDonald v. Provident Indem. Life Ins. Co.</u>, 60 F.3d 234, 237-38 (5th Cir. 1995). Plaintiffs have neither alleged nor presented evidence of a loss to the Plan, and Plaintiffs' claim for individual relief under § 502(a)(2) fails for this reason as well.

Plan to eliminate their "vested" benefits.  Document No. 15 ¶ 39.[12]
The Plan moves for summary judgment on this claim, arguing, inter
alia, that Plaintiffs have presented no evidence that the *Plan*
engaged in any act or practice violative either of ERISA or of the
Plan.

    In response to the Plan's motion for summary judgment,
Plaintiffs argue at length that they have standing to bring an
ERISA § 502(a)(3) breach of fiduciary claim against an ERISA
fiduciary to recover for individual loss; that WorldCom, as Plan
Administrator, was a fiduciary to the Plan; and that WorldCom, as
Plan Administrator, breached its fiduciary duties to Plaintiffs.
*See* Document No. 61 at 23-26.  Once again, however, the *Plan* is not
an ERISA fiduciary and cannot be subject to a breach of fiduciary
duty claim.  *See* Boucher, 13 F. Supp. 2d at 93; Littlejohn, 1997 WL
11292, at *4 n.10; Scott, 1999 WL 33120743, at *4 n.6.  Moreover,
because WorldCom is no longer a party to this suit, whether
WorldCom breached a fiduciary duty owed to Plaintiffs is not an
issue before this Court.   Plaintiffs have neither argued nor
presented any evidence that the *Plan* committed any act or practice

---

    [12] ERISA § 502(a)(3) permits participants and beneficiaries to
seek equitable relief by bringing a civil action to "enjoin any act
or practice which violates any provision of [ERISA] or the terms of
the plan" or to "obtain other appropriate equitable relief (i) to
address such violations or (ii) to enforce any provisions of
[ERISA] or the terms of the plan."  29 U.S.C. § 1132(a)(3).

that violated ERISA or the Plan, and the Plan is therefore entitled to summary judgment on Plaintiffs' § 502(a)(3) claim.[13]

C.   Plaintiffs' Supplemental Motion for Class Certification

Plaintiffs move to certify a class that includes all WorldCom employees who were participants in the Plan, were on long term disability, were terminated from employment while on long term disability, and who were receiving benefits under the Plan at the time of their terminations.  *See* Document No. 44 at 9.  Having determined that the Plan is entitled to summary judgment on Plaintiffs' ERISA claims, however, the Court concludes that Plaintiffs' motion for class certification should be denied as moot.  *See*, *e.g.*, Floyd, 833 F.2d at 534 (holding that the district court did not err in dismissing the named plaintiffs' claims on summary judgment without reaching the issue of class certification).

---

[13] Moreover, like § 502(a)(1)(B) claims, § 502(a)(3) claims for breach of fiduciary duties are subject to the exhaustion of administrative remedies requirement.  McGaskey v. Hosp. House-keeping Sys. of Houston, Inc., 942 F. Supp. 1118, 1125 (S.D. Tex. 1996) (Rosenthal, J.) (citing Simmons v. Willcox, 911 F.2d 1077, 1081 (5th Cir. 1990)).  Thus, Plaintiffs' failure to exhaust their administrative remedies under the Plan also precludes their § 502(a)(3) claim.

IV.   Order

For the foregoing reasons, it is

ORDERED that Defendant The WorldCom Health and Welfare Benefits Plan's Motion for Summary Judgment (Document No. 41) is GRANTED, and Plaintiffs David Shepherd's and Bruce Goldfarb's claims against The WorldCom Health and Welfare Benefits Plan are DISMISSED.  It is further

ORDERED that Plaintiffs David Shepherd's and Bruce Goldfarb's Supplemental Motion for Class Certification (Document No. 44) is DENIED AS MOOT, and Plaintiffs' Motion for Continuance of the Court's Consideration of Defendant's Motion for Summary Judgment Pending Deposition of Ms. Susan Tavel (Document No. 47) and Motion to Strike Summary Judgment Evidence (Document No. 62) are DENIED.

The Clerk will enter this Order and send copies to all parties of record.

SIGNED at Houston, Texas on this 9th day of September, 2005.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE